**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:15cv890-WHA |
| | ) | |
| CHAD L. SVENBY, AMANDA SVENBY, | ) | (wo) |
| and INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. #6), filed by the Plaintiff, Wells Fargo Bank, N.A., and a Cross-Motion for Summary Judgment filed by the Defendant Internal Revenue Service (Doc. #8).

The Plaintiff, Wells Fargo Bank, N.A. ("Wells Fargo") filed a Complaint in the Circuit Court of Autauga County, Alabama to quiet title and for declaratory judgment. The Internal Revenue Service ("IRS") removed the case to this court on the basis of 28 U.S.C. §§1441, 1442(a)(1). Because the IRS is a party, the court has subject matter jurisdiction in this case.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED and the Cross-Motion for Summary Judgment is due to be DENIED.

**II. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56 (c)(1)(A),(B).  Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movants:

Defendants Chad L. Svenby and Amanda Svenby ("the Svenbys") acquired title to property in Deatsville, Alabama on August 7, 2008. The home was subject to a Wells Fargo mortgage in the amount of $203,000.00, which was recorded on August 26, 2008.

On November 15, 2012, the IRS executed a Federal Tax Lien against the Svenbys.

Wells Fargo has presented affidavit evidence of the Vice President of Loan Documentation with Wells Fargo which explains that on November 19, 2012, in connection with refinancing their earlier mortgage, the Svenbys gave a replacement mortgage to Wells Fargo in the amount of $192,869.00 to secure a first priority lien on the property. (Doc. #6-1 at p.3). The affidavit states that Wells Fargo accepted the execution of the mortgage as a first lien purchase money mortgage with the funds resulting thereof being used expressly for the purpose of paying off the Prior Mortgage and refinancing the ownership of the Svenbys' property.   (Id.)

On November 28, 2012, the IRS tax lien was recorded.

On December 4, 2012, Wells Fargo executed a cancellation and release of the Svenbys' first mortgage, and the release was recorded on December 10, 2012.

Wells Fargo's replacement mortgage was recorded on December 20, 2012.

## IV. DISCUSSION

There is no dispute about the facts of this case, nor a dispute that Wells Fargo and the IRS each hold a valid lien against the Svenbys's property. Under the facts, Wells Fargo had a recorded mortgage at the time the IRS recorded its lien, but then Wells Fargo released that mortgage, and recorded a new mortgage. The dispute is over the legal effect of Wells Fargo

having released its prior mortgage and recorded the new mortgage after the IRS filed its tax lien.

"Traditionally, under federal tax law, two basic principles governed the adjudication of priority of competing liens: (i) 'the first in time is the first in right'; and (ii) a federal tax lien is superior to a nonfederal lien that is inchoate," but, "[t]he Federal Tax Lien Act of 1966, 80 Stat. 1125, as amended, 26 U.S.C. § 6323, ... modified the Federal Government's preferred position under the choateness and first-in-time doctrines and recognized the priority of many state claims over federal tax liens." *Atl. States Const., Inc. v. Hand, Arendall, Bedsole, Greaves & Johnston*, 892 F.2d 1530, 1534 (11th Cir. 1990) (citations omitted).

Under 26 U.S.C. §6323(a), "[t]he lien imposed by section 6321[1] shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary."

"The term 'security interest' means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth." 26 U.S.C.A. § 6323(h)(1). Therefore, to come within §6323(a), the

---

1 Under 26 U.S.C. §6321(a) of the Internal Revenue Code, the failure of a taxpayer to pay taxes after demand gives rise to a tax lien in favor of the United States which attaches to all property and rights to property, whether real or personal, belonging to such a person. Moreover, property acquired after the tax lien arises is reached by the lien. Since a federal tax lien is wholly a creature of federal law, the consequences of a lien that attaches to property interests, e.g., priority determinations, are matters of federal law. *See United States v. Rodgers*, 461 U.S. 677, 683 (1983).

holder of a security interest must establish four conditions: (a) the security interest was acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss, (2) the property to which the security interest was to attach was in existence at the time the tax lien was filed, (3) the security interest was, at the time of the tax lien filing, protected under state law against a judgment lien arising out of an unsecured obligation, and (4) that the holder of the security interest parted with money or money's worth. *In re Haas*, 31 F.3d 1081, 1085 (11th Cir. 1994). The fourth condition is at issue here.

The court in *In re Haas* concluded that Alabama law would protect a judgment creditor without notice from an erroneously released lien. *Id.* at 1086. In this case, Wells Fargo argues that it has a security interest protected against a judgment lien arising out of an unsecured obligation under Alabama law because (1) its second mortgage is subrogated to the first, or (2) the second mortgage replaced the first under state law. Alternatively, Wells Fargo argues that the second mortgage falls within the Safe Harbor provision in 26 U.S.C. 6323(d). The court begins with the subrogation theory.

1. Subrogation

Title 26, §6323(i)(2) provides as follows: "Subrogation.—Where, under local law, one person is subrogated to the right of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321 or 6324."

Wells Fargo argues that under Alabama law, it has a right of subrogation to its prior mortgage, and so its right of subrogation means that it had a security interest before the IRS made its filing, meaning that the Wells Fargo security interest has priority over the IRS lien. Wells Fargo cites the "local law" of Alabama by which equitable subrogation applies: (1) if the

loan was used to pay off the debt secured by the prior lien, the parties contemplate that the lender will have security of equal dignity with the lien discharged, (3) the whole debt was paid, (4) the lender does not have actual knowledge of the intervening lien and the ignorance is not the result of culpable negligence, and (5) the intervening lienor is not burdened or embarrassed. *Foster* v. *Porter Bridge Loan, Inc*., 27 So. 3d 481, 484 (Ala. 2009).

The IRS contends that this case cannot fall within the exception for subrogation priority, because the facts do not involve subrogation "to the right of another" within the meaning of the federal statute.

Wells Fargo argues in response that the federal statute does not impose an extra requirement on the local law, and that Alabama law has no requirement that subrogation be "to another."

The Ohio case relied on by the IRS, *United States v. Long*, 121 F. Supp. 3d 763, 785 (N.D. Ohio 2014), in support of its argument, quotes the Restatement (Third) of Property (Mortgages) § 7.6 cmt. e (1997).[2]  The Restatement says "[o]bviously subrogation cannot be involved unless the second loan is made by a different lender than the holder of the first mortgage; one cannot be subrogated to one's own previous mortgage." Restatement (Third) of Property (Mortgages) § 7.6 cmt. e (1997). While this statement has not been adopted by an Alabama case, there is case law regarding subrogation which is consistent with the description in the Restatement. *See, e.g., Crutchfield v. Johnson & Latimer*, 8 So.2d 412, 414 (Ala. 1942) (stating "[a] person entitled to subrogation must work through the creditor whose rights he

---

2 Wells Fargo relies on a different provision of the Restatement (Third) of Property (Mortgages) in support of its motion. (Doc. #6 at p.10).

claims" and the person entitled to subrogation "can be subrogated to no greater rights than the one in whose place he is substituted."). Significantly, *Stephens Wholesale Building Supply Co., Inc. v. Birmingham Fed. Savings and Loan Assoc., et al.*, 585 So.2d 870 (Ala. 1991), the case relied on by Wells Fargo, does not apply subrogation principles in evaluating the priority of a subsequent mortgage.

In *Stephens Wholesale Building Supply Co.,* a lender sought priority based on its own previous loan. In analyzing the priority issues, however, the court cited to a previous Alabama case involving a " 'second' or replacement mortgage."   585 So.2d at 872 (citing *Higman v. Humes*, 127 Ala. 404 (1900)). The court explained that Alabama courts have looked to the intent of the parties in deciding whether the taking of a "replacement mortgage" extinguishes the prior mortgage. *Id.* at 872.   The case, therefore, did not apply subrogation principles, but instead relied on a replacement mortgage theory.

It appears to the court, therefore, that under both the plain language of the federal statute, requiring subrogation "to the right of another," 26 U.S.C. §6323(i)(2), and under Alabama law, when a holder of a security interest in property attempts to gain priority through substitution of its own new mortgage, subrogation principles do not apply to give the holder of the security interest priority. Instead, Alabama courts analyze the priority issue as a replacement mortgage issue, rather than a subrogation issue.   Therefore, the court now turns to Wells Fargo's replacement mortgage theory.

2.   Replacement

The IRS contends that *Stephens Wholesale Building Supply Co.* replacement mortgage analysis does not apply in this case because Wells Fargo's first mortgage was released and so

7

Wells Fargo did not have a "security interest" at the time of the release. Under this theory, replacement principles to determine priority are not relevant because there is no security interest. The IRS also states that Wells Fargo could have modified the terms of the prior mortgage in a modification to the mortgage, but instead executed a new mortgage and negligently released the prior mortgage. The IRS further argues the replacement theory is not mentioned in §6323 as an exception to the first-in-time rule, and so cannot be applied in this case. The IRS finally states that Treasury Department regulations do not allow for relation back of filing in determining priority.

The court will begin with the security interest argument. The federal definition of "security interest" requires a consideration of the priority, because a security interest exists if it "has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation." 26 U.S.C. §6323(h)(1). In the IRS's view, Wells Fargo had a security interest in 2008, that interest ended when it was released, and Wells Fargo must depend on a relation back argument for the second interest, which arose on December 20, 2012, to be considered in existence at the time of the IRS's filing on November 28, 2012. Alabama law, however, does not appear to support that analysis.

In *Stephens Wholesale Building Supply Co, Inc.,* the Supreme Court of Alabama applied a replacement mortgage theory where a bank executed a mortgage after executing a prior mortgage. The court explained that there are criteria for determining whether the original mortgagee loses his priority over subsequent mortgagees when he takes a second or replacement mortgage but does not release the original mortgage. *Stevens Wholesale Building Supply Co., Inc.*, 585 So.2d at 872. The court explained that the replacement mortgage does not extinguish

the prior mortgage if the parties did not intend to discharge and pay the earlier mortgage. *Id.* Although the IRS attempts to distinguish this case on the basis that the release in the instant case was recorded, the court cited to a case in which the prior mortgage was released and the release was recorded. *Id.* at 872 (citing *Sullivan v. Williams*, 98 So. 186 (Ala. 1923)).

In *Sullivan*, the court explained that if there is no release of a prior mortgage, there is a presumption that later notes were not meant to discharge earlier notes, whereas recording a release creates the "contrary presumption." *Sullivan*, 98 So. at 187. The presumption, however, may be overturned by "proof of an intent of the parties that the receipt or release was not to operate according to its expressed terms, but was executed for other purpose than to show the satisfaction of the mortgage debt and release of the mortgage lien." *Id.*

*Bay Minette Production Credit Ass'n v. Citizens' Bank*, 551 So. 2d 1046 (Ala. 1989), also cited in *Stephens Wholesale Building Supply*, 585 So. 2d at 872, also involved a replacement mortgage, where a portion of the property was sold, and the replacement mortgage was entered without intent to destroy the original mortgage lien. *Bay Minette Production Credit Ass'n*, 551 So. 2d at 1048. The *Bay Minette Production Credit* case included the finding that there was no intention "to destroy the original lien, but an intent only to restate the balance due and to adjust the rate of interest on the note." 551 So.2d at 1048.   The court noted that "there is no evidence that [the judgment creditor] relied on the cancellation, for it was entered on the record subsequent to [it] recording its judgment lien." *Id.* The court explained the holding of *Sullivan* as being that where the mortgagee surrenders a note and a mortgage, has it satisfied of record, and as part of the same transaction receives a new note for the balance due, without intending to destroy the original mortgage lien, the "lien of the original mortgage is not released so as to

9

make the new mortgage inferior to an encumbrance recorded prior to the new mortgage" unless the subsequent lienholder has acted to his prejudice by relying on the release. *Id.*

The court notes that these Alabama cases involve facts in which some portion of property, or some debtors, are released from the original obligation in the replacement mortgage. *See, e.g., id*. That fact, however, is not determinative, because the courts in the cases focus on intent to release the original lien. *Id.; Bay Minette Production Credit Ass'n*, 551 So. 2d at 1048.

In this case, Wells Fargo and the Svenbys have presented evidence (Doc. #6-1), that they agreed to new terms in a refinancing of the property, so that the change in the new mortgage was merely to restate the balance due. *See Bay Minette Production Credit Ass'n*, 551 So. 2d at 1048 (stating that there was no intention to destroy the original lien but "only to restate the balance due and to adjust the rate of interest on the note."). Wells Fargo also cites the court to replacement mortgage theory that does not rely on selling a portion of the original property, as articulated in the Restatement (Third) of Property (Mortgages) § 7.3 cmt. b (1997) (stating "a senior mortgagee that discharges its mortgage of record and records a replacement mortgage does not lose its priority as against the holder of any intervening interest unless that holder suffers material prejudice.").

Even within this analysis, the IRS has argued that Wells Fargo did not have a security interest at the time the IRS filed its tax lien because the cancellation and the replacement by a new mortgage were not part of the same transaction.

Wells Fargo has presented affidavit evidence, however, that the mortgage "was intended by the parties thereto to be a first priority lien against the Property. Wells Fargo accepted the execution of Plaintiff's Mortgage as a first lien purchase money mortgage, with the funds

10

resulting thereof being used expressly for the purpose of paying off the Prior Mortgage and refinancing the Svenby Defendants' ownership of the Property." (Doc. #6-1 at ¶10).

Under the local law which controls, the court must conclude that Wells Fargo had a security interest in 2008, which, in accordance with the only evidence of intent before the court, remained a security interest which not removed when the initial mortgage was released pursuant to an agreement by which the first mortgage was paid off and a new mortgage entered into by the parties as part of a refinancing transaction. Although the release was recorded after the IRS's filing, there is evidence that there was no intent "to destroy the original lien, but an intent only to restate the balance due." *Bay Minette Production Credit Ass'n*, 551 So.2d at 1048. The court concludes, therefore, that Wells Fargo had a security interest at the time of the IRS filing which retained its priority when the replacement mortgage was recorded.

In its priority analysis, the IRS makes two additional arguments to support its contention that a replacement mortgage theory does not establish priority in Wells Fargo. The IRS argues that there is no exception for replacement mortgages in the Internal Revenue Code. In arguing that the replacement mortgage gives it priority, however, Wells Fargo is not arguing for an exception to "first-in-time, first-in-right," but is instead arguing that it had a "security interest" which was first-in-time. As noted, "security interest" is met by operation of replacement mortgages analysis under Alabama law, because the interest is one protected under local law against a subsequent judgment lien arising out of an unsecured obligation. 26 U.S.C. §6323(h)(1).

The IRS also argues that under *In re Haas*, 31 F.3d 1081 (11th Cir. 1994), federal law precludes Wells Fargo's priority under a replacement mortgage theory. In that case, a first

11

mortgage was mistakenly released. In analyzing the priority issue, the Eleventh Circuit in its analysis of the IRS's priority, cited to *Bay Minette Production Credit Ass'n*, noting that compliance with recording formalities is not conclusive evidence of payment of a mortgage. The Eleventh Circuit held that if there is a class of judgment creditors which could prevail over the bank's interest, the IRS prevails. *Id.* at 1089.   In its opinion, the court considered the lien, which had been mistakenly released, to be "unperfected" at the time the IRS made its filing. *Id.* at 1086. The court explained that after "the mistaken satisfaction, the mortgagee retained an equitable right to have its mortgage reinstated, as opposed to a security interest which was valid against all judgment creditors." *Id.*   In this case, the IRS does not argue that this holding applies, but instead has relied on the alternative holding in *In re Haas* that when a mortgage is mistakenly released, final action is required under local law to equitably reinstate the mortgage, and relation back principles are barred by the federal statute. *Id.* at 1091.

This case is distinguishable from the facts in *In re Haas* because the second mortgage is not a reinstatement of the first after a mistaken release. It is instead a security interest valid under local law against all judgment creditors at the time of the release because the parties intended that the first mortgage be retained and that the amount due be altered. As stated in *Sullivan,* the release was recorded with the intention of "keeping alive the debt and mortgage security." 98 So. at 187. Therefore, the alternative holding *In re Haas,* which analyzed a mistakenly released prior mortgage which had to be reinstated, does not control in this case.

The Internal Revenue Code allows for priority over a tax lien of a security interest which is protected under local law against a subsequent judgment arising out of an unsecured obligation. 28 U.S.C. §6323(h)(1). The local law, the law of Alabama, which applies in this

12

situation is the law of replacement mortgages. A replacement mortgage, to be protected against a subsequent judgment under Alabama law, must not have been intended to "destroy" the first mortgage. 551 So.2d at 1048. The evidence before the court is that Wells Fargo's second mortgage was not intended to destroy the first mortgage, but to preserve it, and to restate the amount due. The court must conclude, therefore, that Wells Fargo has a security interest under state law, which is entitled to priority over the subsequently-recorded IRS tax lien under federal law.

### 3. Safe Harbor

Having concluded that Wells Fargo has a security interest with priority over the IRS's tax lien, the court need not address the alternative argument that Wells Fargo's mortgage falls within the Safe Harbor provision of 26 U.S.C. 6323(d).

### V. CONCLUSION

For the reasons discussed, the Motion for Summary Judgment filed by the IRS (Doc. #8) is due to be and is hereby ORDERED DENIED, and the Motion for Summary Judgment filed by Wells Fargo (Doc. #6) is ORDERED GRANTED as to its replacement mortgage theory.

The relief requested in the Complaint is ORDERED; namely that title is quieted in the property at Lot 13, according to the subdivision of Graham Ridge, Plat NO. 1, as recorded in the Office of the Judge of Probate of Autauga County, Alabama in Plat Book 2006, p. 38, with a physical address of 222 Pine Level Ridge, Deatsville, AL 36022, subject to Wells Fargo Bank, N.A.'s first priority mortgage, recorded in Book 2012, p. 8980, in the records of the Judge of Probate of Autauga County, Alabama, which is superior to the Internal Revenue Service Lien in

Book 2012, p. 276 of the Judge of Probate for Autauga County, Alabama.[3]

Done this 8th day of September, 2016.

                                                 _/s/ W. Harold Albritton
                                                 W.   HAROLD ALBRITTON
                                                 SENIOR UNITED STATES DISTRICT JUDGE

---

[3] The IRS requested an accounting if this court found that equitable subrogation applied. (Doc. #8 at p.9 n.2). Such relief is on based on issues not before the court, and the court declines to order that relief.